May it please the court, my name is Greg Wallace and I represent Shannon Montgomery in this Social Security Disability Appeal. Mr. Montgomery became unable to work in November 2012 after serving 21 years as a police officer. He had to stop working because of his chronic and severe back pain. He suffers from torn and bulging discs at several levels, lumbar end plate fracture, which I had to look up, is a deterioration or tearing of the cartilage and bone between the discs, radiculopathy, and osteoarthritis of the spine. His insured status expired in December 2017, so his claim for benefits now is into its second decade, having been remanded three times due to the Commissioner's errors. The Commissioner's most recent decision denying benefits should be reversed for two reasons at least. First, the ALJ adopted the functional limitations found by a non-examining doctor who was demonstrably wrong about Montgomery's diagnosis and who provided no evidence or explanations to support the limitations that he gave. And second, because the ALJ did not comply with the prior district court remand order. I am happy to answer any questions the court may have at this time. Could you help me understand the importance of Dr. Fuchs's report or answer to the interrogatories in the decision that the ALJ made? I think you've emphasized that he identifies an ailment that no one else has identified, that he did not cite two spots in the record to support his conclusions. How does it fit with the other evidence that the ALJ had about the extent of the disability and the limitations for Mr. Montgomery? Even though the ALJ has said he gave Dr. Fuchs's opinion some weight, that's really a hoax, I suppose, because his RFC finding was verbatim from Dr. Fuchs's opinion. So his opinion is very important in that it apparently influenced the ALJ in denying the claim. Now, Dr. Fuchs's opinion is he misdiagnosed Mr. Montgomery because all of the other diagnoses had to do with neurological and arthritic type of problems, not muscle pain. It was inconsistent with all of the other diagnoses, all of the other MRIs. For example, there are at least two MRIs in the record that show that his torn bulging disc have moderate to severe impact on or narrowing of the neural foramina. Of course, the implant fractures could count for back pain. The real problem with Dr. Fuchs's opinion is that under the rules for evaluating a doctor's opinion, they have to be both consistent with the other evidence in the record and supported by at least the treating notes. Now, at this time, he wasn't a treating doctor, but there's simply no evidence that supports his decision and there's no evidence and it's inconsistent with... Are the limitations, though, that he offered up consistent with the other evidence? Well, one of the problems in this case and the reason why the district court initially remanded the case for a consultative examination is that there is no medical opinion. There's treatment notes, lots of treatment notes from primary care doctor, neurosurgeon, pain specialist, but there is no medical opinion as to Mr. Montgomery's functional limitations during the relevant period. But that's the ALJ's decision, right? The functional limitations. The ALJ has to make that determination. Yes, but as this court said, the RFC finding has to be based on some medical evidence. So to find that Dr. Fuchs's report is insufficient to rely on, do we have to essentially say that we don't believe the ALJ when he said he gave it some weight? It seems to me that that's kind of a driving force here in terms of the ALJ's opinion. You're saying, no, it had to have taken it into account more significantly. So do we have to say, no, that's just not right? It's not just some weight? Well, if you look at the fact that he adopted the restrictions of Dr. Fuchs verbatim, I would say he gave that report great weight or even controlling weight. So I think that... And so that then goes to the supportability and consistency of Dr. Fuchs's opinion with the other medical evidence in the record. And the ALJ really didn't address that question. Because Dr. Fuchs, under the part where he gave his limitations, he was asked to give references to the medical evidence that supported that opinion. He gave none. It was just the limitations and he was silent about the medical evidence. When he gave the medical evidence supporting the diagnoses, he gave reference to six places in the opinion. Three of them were during the relevant period of time. The other three were outside that time period. One of them had to do with a toe laceration. What that does has to do with Mr. Montgomery's back pain, I don't know. But the other two were simply diagnoses of neurological problems, which contradict the very diagnoses that Dr. Fuchs gave. Can those be consistent though? The muscular and the... How do you describe what you would say... Neurological, neurological, arthritic type pain. Can those coexist? Is there necessarily a contradiction between those? In all of the medical evidence that was generated during the relevant period by the doctors who treated him, not one single doctor diagnosed him with myofasciitis, which is a muscle pain. Maybe there was some muscle pain, but his primary problem was in the neurological and osteoarthritic deficits in his back. How common are these very brief reports or interrogatories? I don't know that I've seen them that often. It seems very short. It's not a descriptive report. It's sort of just coming to conclusions. Is that a common way to seek advice or a recommendation from a doctor? Are you talking about Dr. Fuchs' report? Yes. Well, that's typical in many ways of reports that are conducted by non-examining doctors, because all they're given is some medical evidence of the record. And they're given a form by the agency to fill out. Now, the form the agency gives to the consultative examiners, like it gave to Dr. Merediths, asks him to indicate his functional limitations. And that's why Dr. Merediths' report really didn't comply with the district court's order, because it contained no functional limitations. Would you like to reserve the rest of your time, Mr. Wallace? I will if there are no more questions. Very well. Thank you, Your Honor. Thank you. Good morning. May it please the court. Frank Tankard for the Commissioner of Social Security. This case presents two questions. First, did the commissioner comply with the district court's remand instructions? And second, did the commissioner properly evaluate Dr. Fuchs' opinion? The answer to both questions is yes. I'll start with the second first, since that was the main part of the discussion that was just had. Let me ask you about that and hopefully kind of get to the point. How do we know whether the ALJ gave it some weight rather than controlling weight based on the record? Well, first off, this is a case decided under the prior opinion regulations. I'll just note, as far as the some weight versus controlling, for cases filed after March 2017, we have a different set of regs. So this is an old regulations case, just to note that first. And only a treating physician under the regulations is entitled to, quote-unquote, controlling weight here. That said, there is nothing at all improper about an ALJ adopting the specific limitations in any opinion, whether it's a state agency opinion, whether it's a medical expert opinion, a consultative examiner, a treating physician, and ultimately including those restrictions lining up with them in the RFC, so long as the ALJ properly discusses the entire record and that substantial evidence supports it. So here the ALJ said, quote-unquote, some weight. But the question as far as error and reversible error here is not whether the ALJ used the term some weight, great weight, whatever the ALJ might have said, those aren't magic words. The question is whether those specific limitations are in fact supported by substantial evidence based on the record as a whole. So then looking at both Dr. Fuchs' opinion and the rest of the record here, first off, Dr. Fuchs did provide citations to the record specifically. Now those were on one page of the report, and then you flip to the second page where the medical expert provided the functional assessment, saying how much Mr. Montgomery could lift, walk, that sort of thing. The fact that those citations, which were given to specific pages of exhibits in the record, was on the prior page, does not mean, as Mr. Montgomery suggested, that those pertain only to that diagnosis and not to the functional limitations. I think it's more reasonable to read the opinion as a whole. The ALJ looked at those records and found that they did in fact support that functional assessment. I would note also that there were two state agency opinions that the ALJ also considered and evaluated, and which were generally consistent with the RFC. In fact, they were somewhat less restrictive, those two state agency opinions with the RFC. There's no opinion of record that was more restrictive. To Dr. Fuchs' response, given the length of this case, there are few citations to the record. You would agree with that, wouldn't you? Yes, I would agree with that. How are we supposed to view that? How is the ALJ supposed to view that? If you're asking a doctor to give, in this case, his opinion on these limitations, and really doesn't give the ALJ a lot to refer to, to say, hey, here's why I'm saying what I'm saying. I think you said something about inference. Is that what the ALJ needs to do, piece it together? In effect, that is the ALJ. It is ultimately the ALJ's responsibility under the regulations to evaluate the RFC. In that sense, when you have an imperfect opinion, which happens in many cases where there are multiple opinions. Here, there were three opinions regarding Mr. Montgomery's physical limitations, the two state agency opinions, plus Dr. Fuchs. And then we have the consultative examiner, Dr. Meredith, as well, who did not provide a functional assessment, but did examine Mr. Montgomery and provided objective findings that were generally consistent, the ALJ found, with the opinions. That is ultimately the ALJ's job to synthesize that. And as this court has held multiple times, there is no requirement to rely on any particular opinion. It's not that the ALJ picks which opinion is the most thorough, which one has the longest narrative and the most articulate and says that one is the best. There could be a case where all the opinions aren't ideal. As here, the consultative examiner did not provide a functional assessment, but merely had objective examination results. The commissioner then responded, addressed that in part by ordering a medical expert opinion. There, that also is not perfect. As Mr. Montgomery rightly points out, under the regulations, an in-person examination has some value that the person examined in person. But on the other hand, here we have a date last insured of December 2017. The medical expert has the advantage here then, rather than personally examining the person well after the date, they have the advantage of going back and looking at the medical records during the relevant period, which the medical expert did here and cited. Dr. Fuchs, do you mean? Dr. Fuchs, yes. How many is too few citations? In other words, if he hadn't really cited to anything in the record, what would happen then? And assume that the ALJ didn't send it back and say, tell me where you got this. Could the ALJ then still rely on the rest of the record to say, well, here's where I think this is coming from? The ALJ could. It's a fact-specific inquiry. There is no requirement at all of any medical opinion to be in the record. And, in fact, there could be cases, and are occasionally cases, with no medical opinion at all, where the ALJ is still, and it's allowable under the regulations and has been upheld by this court, able to formulate the person's RFC based on that. So as far as analyzing a particular opinion, whether there's a narrative statement, the degree to which it's supported, are certainly relevant factors. The question here is whether the ALJ, in formulating the RFC, whether there, not whether it was perfect, but whether there is substantial evidence in the record that could support the ALJ's finding, which, as the Supreme Court has held in BSTEC, is a fairly low bar to meet that substantial evidence standard. I would also address a question that was discussed earlier about myofasciitis, and Dr. Fuchs's listing of that as among the diagnoses. Myofasciitis is basically a condition having to do with muscle pain, and the relevant question here is whether the symptoms, or the most relevant question, it is relevant, and it's fair for Mr. Montgomery to point out that that diagnosis is not supported by the record, and the Commissioner does not dispute that, but ultimately, under the substantial evidence standard, the question is whether there is evidence in the record to support the functional abilities. So there are, again, it's not uncommon that on a list of diagnoses, sometimes there are errors, but the ultimate question is, regardless of what the specific diagnosis was, what can Mr. Montgomery do functionally? And the ALJ's analysis in comparing not just the medical expert opinion, but also comparing it to the two state agency opinions, and the record as a whole, whether that's supported. To touch briefly on the remand order issue too, I would just note that the same magistrate judge who remanded the case found that the Commissioner complied with its remand order when it came back, in the case that's currently on appeal, and this court has repeatedly rejected invitations to override the District Court's policing of its own remand orders. So in conclusion, if there are no other questions, the Commissioner complied with the District Court's 2016 remand order, properly evaluated Dr. Fuchs' medical opinion, and determined Mr. Montgomery's RFC based on the record as a whole. The Commissioner respectfully asks the Court to affirm the District Court's decision upholding the ALJ's decision. Thank you. Thank you, Mr. Tanker. Mr. Wallace, rebuttal. May it please the Court. We wouldn't be here today talking about Dr. Fuchs' opinion had the Commissioner followed his own rules. The original District Court remand found that the ALJ had not properly assessed Montgomery's RFC during the relevant period, remanded for reconsideration of that, and that was to include obtaining a consultative examination. The ALJ on remand said, I don't have to follow the District Court opinion, and ruled against Mr. Montgomery. Again, the case went back up to District Court. The Commissioner didn't want to defend that in front of District Court, made a voluntary motion to remand. It eventually got to where Dr. sorry, Meredith, his consultative examination was performed a year and eight months after the order, after his insured status expired, and he didn't include any functional restrictions in that opinion. And then we go back and finally we get Dr. Fuchs, who's a non-examining doctor. He's an 86-year-old retired orthopedic guy who does this for the agency. He doesn't cite any evidence supporting the limitations that he's put on. So we're back to the ALJ drawing his own inferences from the medical record, which this court has cautioned against in the Shonto's case, which is cited on page 38 of our brief and page 11 of our reply brief. Thank you, Your Honor. Thank you. Thanks to both counsel for your appearance and arguments today. Case is submitted. You may be dismissed.